**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| TERESA A. FRAKES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | 1:04-cv-1396-SEB-VSS |
| | ) | |
| JO ANNE B. BARNHART, Commissioner | ) | |
| of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**Entry Discussing Complaint for Judicial Review**

Teresa A. Frakes ("Frakes") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq.*

For the reasons explained in this Entry, the Commissioner's decision must be **affirmed.**

### I. BACKGROUND

Frakes applied for DIB on March 22, 2001, alleging an onset date of August 30, 2000. Her application was denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted, and such hearing was conducted on October 1, 2003. Frakes was present, accompanied by her attorney. Medical and other records were introduced into evidence, and Frakes, her mother, a medical expert and a vocational expert testified.

The ALJ denied Frakes' application on February 10, 2004. On June 25, 2004, the Appeals Council denied Frakes' request for review of the ALJ's decision, making the ALJ's decision final, *see Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994), and this action for judicial review of the ALJ's decision followed.  The court has jurisdiction over Frakes' complaint pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Frakes met the disability insured status requirements of the Act on August 30, 2000, her alleged date of onset; (2) Frakes had not engaged in substantial gainful activity since allegedly becoming disabled; (3) the medical evidence established that Frakes had severe impairments due to bilateral shoulder degenerative joint disease, bipolar disorder, post traumatic stress disorder, and chronic pain syndrome, but she did not have an impairment listed in or medically equal to one listed in Appendix 1 to Subpart P of Regulations No. 4; (4) Frakes' subjective complaints and allegations were carefully evaluated but for the reasons set forth in the body of the decision, her allegations were found not credible to the extent they would indicate she could not do work; (5) Frakes had the residual functional capacity ("RFC") to perform sedentary and light work activity with the following specifications: she was able to lift and carry five pounds frequently and ten pounds occasionally; sit, stand and walk eight hours in an eight hour day, and crawl occasionally; she had fair ability to use judgment, interact with supervisors, deal with work stresses, maintain attention and concentration, behave in an emotionally stable manner, and relate predictably in social situations; she had poor ability to understand, remember, and carry out complex job instructions; her ability to follow work rules, relate to co-workers, use judgment, function independently, and demonstrate reliability was considered good; she was also noted to have good ability to understand, remember and carry out detailed but not complex and simple job instructions, and maintain personal appearance; (6) Frakes was unable to perform her past relevant work; (7) Frakes was a "younger individual" with a high school education and completed one year of undergraduate studies; and (8) considering Frakes' age, education, work experience, and RFC, there were a significant number of unskilled sedentary jobs which she could perform, such as data entry clerk (5,280 locally and 95,000 nationally), inspector (50 locally and 7,000 nationally), security monitor (62 locally and 6,200 nationally), and general office clerk (4,186 locally and 661,000 nationally). With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Frakes was not under a "disability" as defined in the Act at any time on or before the date of the ALJ's decision.

## II.  DISCUSSION

### A.  Applicable Law

To be eligible for disability benefits, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1).

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Butera v. Apfel,* 173 F.3d 1049, 1054 (7th Cir. 1999).

> In order to determine whether an individual is entitled to disability insurance benefits, the ALJ must engage in a sequential five-step process which establishes whether or not the claimant is disabled. The claimant must show that: (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he

    is unable to perform any other work within the national and local economy. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir.1997); 20 C.F.R. § 416.920.

*Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

    The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B.    Analysis

    Frakes first argues that the ALJ's decision is not supported by substantial evidence because he failed to discuss her range of motion limitations in her left shoulder. She notes that a treating physician issued "no overhead work" as a permanent restriction on July 5, 2001, and that limited range of motion in the left shoulder was also documented by consultative examiner Dr. Shaheen on October 18, 2001. Although in his decision the ALJ did not include a restriction on overhead reaching, the transcript of the hearing reflects that "no overhead reaching" was included in the hypothetical question posed to the vocational expert, and that the jobs upon which the ALJ relied in finding Frakes not disabled were jobs that did, in fact, include that restriction. (R. at 580-81). Accordingly, it is not appropriate to remand the decision to the ALJ to make that clarification. *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir.1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

    Frakes further asserts that the ALJ irrationally rejected the opinion of treating and examining psychological experts. Specifically, she contends that the ALJ's finding that Frakes had a "fair ability to use judgment, interact with supervisors, deal with work stresses, maintain attention and concentration, behave in an emotionally stable manner, and relate predictably in social situations," (R. at 28, 29), was inconsistent with the assessment of treating and consultative psychologists that Frakes functioned at a global assessment functioning ("GAF") between 55 and 60, indicating moderate symptoms.

    The ALJ did not ignore the evidence of Frakes' mental impairments. He discussed office notes from a community mental health center, psychiatrist David Thomas, and social worker Peggy Woodhall, as well as the evaluations by consultative psychologist Dr. Karkut and state agency psychologist Dr. Neville. (R. at 24-25). The ALJ also discussed the testimony of the psychologist medical expert, Dr. Buban. (R. at 26). The ALJ noted that Dr. Buban reviewed the medical evidence which revealed a GAF of 55, as well as evidence which revealed mild to moderate symptoms of depression. *Id.* The ALJ further discussed Dr. Buban's conclusions that Frakes' impairments caused mild impairments with regard to activities of daily living and social functioning; moderate limitation with regard to concentration, persistence, and pace; a good ability to follow work rules and use judgment; a fair ability to deal with the public and concentrate; and that her symptoms appeared to

be controlled with medication. *Id.* The ALJ expressly noted the conflicting opinions relative to Frakes' mental impairments.  (R. at 26-28). Substantial evidence supports the ALJ's conclusions in evaluating Frakes' mental impairments. The court must decline any invitation to resolve conflicts in or reweigh the evidence. *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) ("We cannot substitute our own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled.").

Frakes next argues that the ALJ erred in evaluating her credibility. She asserts that the ALJ failed to recognize that the severity of her conditions fluctuated over time and instead only considered her present day status. She also contends that the ALJ failed to consider her headaches.

The ALJ determined that Frakes was not credible to the extent that she alleged that she could not perform any work.  The ALJ recited the appropriate regulations and criteria to consider when evaluating a claimant's credibility.  (R. at 26, citing 20 C.F.R. § 404.1529; SSR 96-7p). The criteria noted by the ALJ include: the nature, location, onset, duration, frequency, radiation, and intensity of pain; precipitating and aggravating factors; type, dosage, effectiveness, and adverse side-effects of medication; treatment, other than medication, for relief of pain; functional restrictions; and daily activities. *Id.* The ALJ discussed Frakes' allegations of pain in her shoulders, neck and face.  He discussed her daily activities, the frequency and severity of her pain, the treatments she had undergone (heating pad, shoulder surgeries, medication, and injections), her psychological symptoms, and reports of treating physicians and psychologists and other medical sources. (R. at 26-28).

As far as Frakes' headaches are concerned, the ALJ did discuss Frakes' history of neck pain radiating into her head.  He noted that she was given a diagnosis of chronic pain with a history of cervical sprain, cervicalgia, and cervical spondylosis, that she had undergone pain management for that condition, was seen in the emergency room, wore a cervical neck collar, received joint injections and nerve blocks, and was prescribed medication. (R. at 22-23). The ALJ further noted that on November 16, 2001, September 4, 2002, and March 12, 2003, Frakes reported that her condition improved with medication and/or injections. *Id.* The ALJ also noted that by May 2003, treating physicians reported that Frakes' neck pain no longer radiated to her head and she had full range of motion. (R. at 27).  The ALJ did not ignore Frakes' complaints of neck pain and headaches.

The court grants special deference to the credibility determination made by the ALJ and generally will not overturn an ALJ's credibility finding unless it is "patently wrong." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir.2001).  In this case, the ALJ provided reasons supported by record evidence for finding not fully credible Frakes' allegations that she could not work. The ALJ's discussion relating to Frakes' credibility is adequate to allow the court to trace his reasoning.  The court does not find that the ALJ's analysis is patently wrong, and therefore, must affirm the ALJ's credibility determination.

In sum, in determining Frakes' eligibility for benefits, the ALJ applied the proper analytical methodology and fairly considered and weighed the evidence. The ALJ's decision was based on consideration of: (1) Frakes' age, education, and work history; (2) Frakes' history of diagnoses, treatment, medications, and evaluations; (3) Frakes' own account of her conditions, capabilities, limitations, symptoms and daily routine; and (4) the testimony of Frakes' mother, a medical expert and a vocational expert. There was no significant evidence, symptom, complaint, or issue which the ALJ's decision overlooked. Substantial evidence supports the ALJ's findings of fact and identification and assessment of Frakes' impairments, and there was no error of law in the manner in which the evidence was evaluated.  The ALJ sufficiently articulated his assessment of the evidence to enable the court to "trace the path of [his] reasoning," *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (quoting *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996)), and there was substantial evidence to support the ALJ's determination that Frakes was not disabled as defined in the Act at any time through the date of the ALJ's decision.

### III. CONCLUSION

The final decision of the Commissioner is supported by substantial evidence and is not tainted by legal error. In these circumstances, Frakes is not entitled to relief in this action. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED**.

Date: 08/15/2005

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana